# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1495V
UNPUBLISHED

| | |
|---|---|
| MICHELLE MCNABB,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: June 1, 2022<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for petitioner.

*Andrew Henning*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION AWARDING DAMAGES[1]

On September 27, 2019, Michelle McNabb filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccination that was administered on November 14, 2017. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters, and although entitlement was conceded, the parties could not resolve damages, leaving that determination to me.

For the reasons set forth below, and pursuant to my oral ruling on May 20, 2022[3] (which is fully adopted herein), I find that Petitioner is entitled to an award of damages in

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.

[3] *See* Minute Entry dated June 1, 2022. The transcript of the hearing, which was not yet filed as of the date of this Decision, is hereby incorporated into this Damages Decision by reference.

the amount **of $129,168.54**, **consisting of $125,000.00 for actual pain and suffering, $2,364.45 for unreimbursable past medical expenses, and $1,804.09 for past lost wages.**

### I.   Relevant Procedural History

Almost two years after the case was filed, Respondent filed his Rule 4(c) Report in June 2021 conceding that Petitioner was entitled to compensation. Rule 4(c) Report ECF No. 32. In view of Respondent's position, a ruling on entitlement was entered. ECF No. 33. Thereafter, the parties attempted to informally resolve damages but reached an impasse on an appropriate award. ECF No. 38. I ultimately informed the parties that I would resolve their dispute via a "Motions Day" hearing, which was held on May 20, 2022.[4]

Petitioner offered her damages brief on January 3, 2022, requesting that I award $135,000.00 for past pain and suffering. Petitioner's Brief in Support of Damages ("Pet. Brief") at 1. ECF No. 42. On February 1, 2022, Respondent filed a damages brief proposing the lesser award of no more than $75,000.00. Respondent's Brief on Damages ("Res. Brief") at 1. ECF No. 43. The parties otherwise agree that $2,364.45 in compensation for Petitioner's past medical expenses, and $1,804.09 for Petitioner's past lost wages, should be part of the final award. There are no other damages components in contention beyond actual pain and suffering. ECF No. 47.

### II.   Legal Standard

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Berge v. Sec'y Health & Human Servs.*, No. 19-1474V, 2021 WL 4144999, at *1-3. (Fed. Cl. Spec. Mstr. Aug. 17, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and

---

[4] *See* Hearing Order filed April 27, 2022 (Non-PDF).

suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. [5]

### III.   Appropriate Compensation for Petitioner's Pain and Suffering

Pain and suffering is the sole disputed damages component herein, so only the legal standards bearing on its calculation are relevant. In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the medical records and affidavit filed and all assertions made by the parties in written documents and at the expedited hearing held on May 20, 2022. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my ultimate determination on the specific circumstances of this case as set forth herein:

- Petitioner received a flu shot in her left deltoid on November 14, 2017. Ex. 1 at 75.

- On November 27, 2017 (13 days post-vaccination), Petitioner presented to Kanika White, APRN at the St. Francis Columbus Clinic with pain in her left arm that began two weeks prior. Ex. 1 at 82-84. Although Petitioner's exam revealed "moderate tenderness to palpation," she was determined to have normal range of motion with no pain noted on movement. *Id*. at 84. She was diagnosed with left deltoid tendinitis and her treatment plan included Prednisone. *Id*.

- Petitioner presented to Dr. Anthony Miller at St. Francis Columbus Clinic on December 5, 2017 for left arm pain. Ex. 1 at 90-93. An x-ray was performed, and its results were normal. *Id*. at 94. Petitioner was found to have moderate tenderness to palpation over the left deltoid region, left shoulder crepitus, and mild left-side restricted range of motion with pain. *Id*. at 92.  Petitioner was prescribed Mobic and Gabapentin. *Id*. at 93.

- Petitioner presented to Dr. Miller for a follow-up appointment on December 20, 2017. Ex. 1 at 95-99. She reported that her pain worsened, describing it as "sharp"

---

[5] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

and "shooting down her left arm." *Id.* at 95. A left shoulder MRI was ordered, and Petitioner was prescribed a Lidoderm patch. *Id.* at 97.

- Petitioner underwent the MRI on December 26, 2017. The findings revealed (a) mild rotator cuff tendinopathy, more moderate of the infraspinatus tendon with bursal surface partial tear; (2) mild subacromial/subdeltoid bursitis; and (3) a small mid anterior labral tear. Ex. 1 at 100.

- In addition to undergoing an x-ray, on December 28, 2017, Petitioner presented to Dr. George McCluskey at St. Francis Orthopaedic Institute concerning her left shoulder. Ex. 2 at 22-24, 27. In addition to rating her shoulder pain as a seven on a ten-point scale, Petitioner exhibited limited range of motion with tightness at the extremes. *Id.* at 22-23. Dr. McClusky's impression was deltoid myositis and neuritis secondary to the flu shot. After noting that Petitioner "tried taking Mobic . . . [and] she has taken gabapentin, which has not helped," Dr. McCluskey recommended a six-day Prednisone taper and physical therapy. *Id.* at 22, 24.

- Petitioner underwent an initial physical therapy evaluation on January 5, 2018. Ex. 6 at 40-43. She rated her pain as an eight on a ten-point scale, noting that this symptom disrupted her sleep. *Id.* at 40.

- Petitioner returned to Dr. McCluskey for a follow-up visit on February 7, 2018. Ex. 2 at 21. On exam, Petitioner exhibited limited range of motion and was "tender over the deltoid." *Id.* Dr. McClusky's impression was noted to include deltoid myositis. *Id.*

- During Petitioner's February 21, 2018 appointment with Dr. Miller, it was noted that although physical therapy had initially helped, "when she stopped for [two] weeks . . . pain and burning came back." Ex. 1 at 104. Petitioner's exam revealed mild tenderness to palpation, normal range of motion and no pain with joint motion. *Id.* at 106.

- Between January 5 and March 2, 2018, Petitioner attended 15 sessions of physical therapy. Ex. 6 at 10-43. During her March 2, 2018 session, Petitioner rated her pain as a four on a ten-point scale. *Id.* at 10.

- Petitioner attended a follow-up appointment at the St. Francis Orthopaedic Institute on March 29, 2018 (over four months after vaccination). Ex. 2 at 19-20. Petitioner rated her pain as a six on a ten-point scale and reported a continuation of shoulder limitations and nightly pain. *Id.* at 19. The medical note indicates that despite an extensive amount of physical therapy, "[Petitioner] continues to have a very painful

4

shoulder [and] has actually gotten worse. As far as her motion is concerned, she lost a lot of motion compared to her last visit just simply [six] weeks ago. She is very stiff on exam today, the stiffest I believe her shoulder has been since we have been seeing her." *Id.*

- Petitioner presented to Dr. McCluskey on April 26, 2018. Ex. 2 at 17-18. In his medical note, Dr. McCluskey revealed that "the main thrust of our discussion was that she was so stiff and inflamed . . . that I feel like she is probably at the point of requiring arthroscopic synovectomy with debridement of the joint, capsular release, as opposed to trying weeks and weeks of more physical therapy . . . the pain is really interfering with her quality of life and her every day activities now." *Id.* at 17.

- On May 8, 2018 (approximately six months post vaccination), Petitioner underwent arthroscopic glenohumeral synovectomy surgery on her left shoulder. Ex. 2 at 25-26. Petitioner's post-operative diagnoses were adhesive capsulitis and glenohumeral synovitis with capsular contracture. *Id.* at 25.

- Petitioner presented to St. Francis Orthopaedic Institute on May 10, 2018 for a post-operative follow up. Ex. 2 at 16. She rated her pain as a three on a ten-point pain scale. *Id.* The medical note documenting this visit indicate that Petitioner would begin an "aggressive stretching program." *Id.*

- Also on May 10, 2018, Petitioner underwent an initial post-operative physical therapy evaluation. Ex. 5 at 134-136. Petitioner rated her pain as a five on a ten-point scale. *Id.* at 134. In his assessment, the physical therapist noted that Petitioner "is at high risk for recurrent stiffness due to severity of pre-op stiffness, surgical findings, and thyroid disorder which increases stiffness risk. Because of these factors, [Petitioner] will likely require more frequent therapy visits and a longer duration of visits than typical for this surgical problem." *Id.* at 136.

- Petitioner presented to Dr. McClusky for a follow-up visit on June 22, 2018. Ex. 2 at 15. She rated her pain as a three on a ten-point pain scale and complained of a "little soreness" and was determined to have terminal stiffness and a "little tenderness over the deltoid insertion." *Id.* Petitioner was instructed to return in two months. *Id.*

- Petitioner followed up with Dr. McCluskey on August 24, 2018 (over nine months post-vaccination). Ex. 2 at 14. Although Petitioner's range of motion was determined to be "excellent," she reported that she continued to experience a great deal of pain in her deltoid region, rating it as a six on a ten-point scale. *Id.*

5

- Petitioner was discharged from physical therapy on March 7, 2019 after attending 43 post-operative treatment sessions. Ex. 5 at 8-10. The discharge summary indicates that Petitioner rated her pain as a one on a ten-point scale and reported that she was "nearly normal." *Id.* at 8-9. Petitioner further noted that she could do most anything she wanted with only a "mild occasional twinge of pain." *Id.* at 9.

The case record overall establishes that Petitioner experienced a moderately severe shoulder injury which was serious enough for her to seek medical care only thirteen days post-vaccination. Despite Petitioner's immediate vigilance in obtaining treatment for her injury, (which included eight medical visits, fifteen sessions of physical therapy, and an MRI), she was compelled to undergo arthroscopic surgery approximately six months after her November 14, 2017 flu shot. Following this procedure, Petitioner's pain ranged between a three and six on a ten-point scale. Although Respondent argues that Petitioner's condition had improved significantly by May/June 2018, Petitioner began a second round of physical therapy on May 10, 2018, ultimately attending another 43 sessions post-surgery. It was only on March 17, 2019 (approximately sixteen months post-vaccination) that Petitioner reported feeling "nearly normal." Ex. 5 at 8-9.

Based on all of the above, Petitioner has demonstrated entitlement to an award for pain and suffering exceeding what has been recommended by Respondent. And Respondent did not offer good comparables involving facts consistent with this record. Notably, with the exception of *Shelton v. Sec'y of Health & Human Servs.*, No. 19-0279, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021), the cases cited in Respondent's brief did not involve petitioners who underwent surgical repair of their injuries. Generally, surgery is required in more severe SIRVA cases, and I have in prior matters noted that the need for surgery justifies a higher-than-average pain and suffering award (often exceeding $100,000.00 – although there is no bright-line "rule" *requiring* an award of this magnitude simply because SIRVA treatment involved surgery).

The above-described course is most similar to the petitioner in *Rafferty v. Sec'y of Health & Human Servs.*, No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020)(awarding $127,500.00 for past pain and suffering to petitioner who was diagnosed with a partial tendon tear, mild tendinosis, and mild osteoarthritis, underwent a total of 54 sessions of physical therapy, underwent arthroscopic surgery, and who recovered well despite having some residual aching scar tissue). Another good comparable case is *Smith v. Sec'y of Health & Human Servs.*, No. 19-0745V, 2021 WL 2652688 (Fed. Cl. Spec. Mstr. May 28, 2021)(awarding $125,000 for past pain and suffering where petitioner received one cortisone injection, reported moderate to severe levels of pain, and was unable to work for one month after receiving the vaccine). I therefore find that a damages award consistent with the results in these two cases is most warranted.

### IV.     Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $129,168.54**, (representing $125,000.00 for Petitioner's actual pain and suffering, $2,364.45 for unreimbursable past medical expenses, and $1,804.09 for past lost wages) **in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.